UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

ANTHONY JEROME MARINELLI,     Case No. 19-31023-dof
    Debtor.     Chapter 7 Proceeding
    Hon. Daniel S. Opperman
_____/

GYPSUM SUPPLY COMPANY,
    Plaintiff,

v.     Adv. Proc. No. 19-3046-dof

ANTHONY JEROME MARINELLI,
    Defendant.
_____/

## OPINION GRANTING PLAINTIFF GYPSUM SUPPLY COMPANY'S MOTION FOR SUMMARY JUDGMENT

### Introduction

Before the Court is Plaintiff Gypsum Supply Company's Motion for Summary Judgment. The Defendant in this adversary proceeding is the Debtor Anthony Jerome Marinelli. Plaintiff filed this action under 11 U.S.C. §§ 523(a)(4) and 523(a)(6) objecting to the dischargeability of debt. The instant Motion for Summary Judgment is brought pursuant to Section 523(a)(4) only.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of certain debts).

### Facts

The Defendant Anthony Marinelli was the owner, officer, and resident agent of Livingston Ceiling and Partitions, Inc. ("Livingston Ceiling") at all relevant times. Livingston

1

Ceiling engaged Plaintiff as its construction material supplier on an open account basis, with Livingston Ceiling agreeing to pay a 1.5% per month time price differential service charge for any outstanding amounts owing and to pay any attorney fees and collection costs. Defendant personally guaranteed the account with Plaintiff on behalf of Livingston Ceiling.

Prior to the bankruptcy filing of Defendant, Livingston Ceiling and Defendant requested that Plaintiff supply labor and materials and supplies for various projects for property improvements, consisting of two specific projects. The first was known as the "Hamilton Project," in which Plaintiff later confirmed Livingston Ceiling was paid $549,111.45, and the second was for the "Brush Park Project," in which it was confirmed that Livingston Ceiling was paid $191,143.90. Livingston Ceiling and Defendant did not pay Plaintiff in full from these funds. The current amount owed by Livingston Ceiling to Plaintiff on these two projects is $14,516.52, plus treble damages, a time price differential service charge of 1.5% per month, and reasonable attorney fees. Plaintiff asserts summary judgment is appropriate because these facts are undisputed, attaching the relevant documents to support such, and that under applicable Michigan law, this debt is nondischargeable under Section 523(a)(4).[1]

Defendant has been unrepresented by counsel at all times in this adversary proceeding and has been given much time and many opportunities to obtain counsel. Defendant filed a two-word response to the instant Motion, stating: "I disagree." At oral argument, Defendant did add that Livingston Ceiling had a 10-year relationship with Plaintiff, and that when Livingston Ceiling fell behind in payments, Plaintiff would stop delivery of products until payment arrangements were made and Defendant would advise Plaintiff to place a lien on certain projects,

---

[1] Plaintiff also seeks a judgment against Defendant pursuant to Federal Rule of Civil Procedure 16(f), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7016, because Defendant failed to attend and participate in court-ordered mediation. Instead of deciding this case on procedural grounds, the Court elects to address Plaintiff's substantive arguments only.

such as the ones in this case. Defendant orally disputed the remaining amounts that were claimed owed by Plaintiff, but did not supply written or sworn evidence in support of these statements.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The burden then shifts to the nonmoving party once the moving party has met is burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

## Standard for Non-Dischargeability Under § 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

(1) a fiduciary relationship
    (a) in the form of an express trust or
    (b) technical trust relationship;
(2) breach of that fiduciary relationship; and
(3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

Once the plaintiff has established the existence of a trust and that the defendant is a trustee of a trust, the burden of proof shifts to the defendant. In *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994), the Court found that the question of burden of proof for defalcation while acting in a fiduciary capacity was a substantive question, and thus should be determined under state law. *Id.* at 502. In reviewing Michigan law, the *Cappella* Court found that:

> Michigan courts have repeatedly stated in various contexts that a trustee must account to the beneficiaries for the disposition of trust funds. . . . Failure to properly so account is, by definition, a defalcation.
>
> It has been stated that the beneficiary has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it . . . [T]he burden then shifts to the trustee . . . to prove it acted with . . . good faith . . . and made full disclosure of all facts related to the transactions at issue. . . . [T]he mere failure to account establishes a loss.
>
> Since trustees have a duty to account under Michigan law, it is only logical that the Debtor, a statutory trustee, must prove that no defalcation occurred – i.e., that he be required to account for the trust funds he received. . . . [T]he Michigan Supreme Court has stated that where a trustee is called upon in a court of equity to

> account for the funds received by him as trustee, . . . the duty rests upon him to so account, and the burden of proof is upon him to establish the correctness of the account.

*Id.* at 500-01 (internal quotation marks and citations omitted).

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *Garver*, 116 F.3d at 180 (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel*, 565 F.3d at 968.

In *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4):

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 273-74 (internal quotation marks and citation omitted).

The Sixth Circuit has addressed the Michigan Building Contract Fund Act ("MBCFA"), which is also known as the Michigan Builders Trust Fund Act ("MBTFA"), in the context of a § 523(a)(4) non-dischargeability proceeding.[2] "[T]he MBTFA satisfie[s] the necessary requirement that the trust exist separate from the act of wrongdoing as a matter of federal law . . . ." *Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted). Thus "contractors"

---

[2] For ease, the Court will refer to the MBCFA and the MBTFA as the "Act" for purposes of this Opinion.

under the Act "are fiduciaries to their subcontractors under § 523(a)(4)." *Id.; see also Johnson*, 691 F.2d at 252.

The *Johnson* court concluded that

> [t]he Building Contract Fund Act satisfies the express or technical trust requirements of section [523(a)(4)]. The trust relationship is unambiguously imposed on a contractor or subcontractor by the language of the statute. The trust res is clearly defined as the monies paid by any person into the building contract fund. The trustee is charged with specific affirmative duties, including paying out trust funds in accordance with the statutorily imposed priority scheme, not using funds for its own purposes so long as trust beneficiaries, laborers, subcontractors and materialmen remain unpaid . . . The fiduciary relationship . . . arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust at that time and continues until all of the trust beneficiaries have been paid.

*Id.* at 252-53.

Therefore, the first element of § 523(a)(4), a fiduciary relationship, is met for funds held under the Act. *See also Patel*, 565 F.3d at 963 ( finding an individual debtor who was an officer, 50% shareholder and day-to-day administrator of affairs of a company hired to act as general contractor was himself a "contractor" subject to liability under the Act).

After the plaintiff establishes a breach of the fiduciary duty, "the plaintiff must demonstrate a loss resulting from the breach." *Sangal v. Strickfaden (In re Strickfaden)*, No. 09-CV-15060, 2010 WL 3583427, at *4 (E.D. Mich. Sept. 9, 2010) (noting there is no defalcation if the funds were spent completing the project or toward contract-related bills). Supplying materials on open account is not sufficient to establish a res required under § 523(a)(4); however, supplying materials for a specific project does create the required trust under the Act. *Astro Building Supplies, Inc. v. Slavik*, No. 10-2206, 2011 WL 6157348, at *1 (6th Cir. Dec. 12, 2011).

In *Patel*, the Sixth Circuit Court of Appeals discussed intent in the context of the Act. As "carefully explained" in its previous holding in *Johnson*:

> defalcation occurs when evidence supports "the objective fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section [524](a)(4) so long as the use was not the result of mere negligence or a mistake of fact." Thus, there is no such thing as "defalcation per se" and instead the debtor must have been objectively reckless in failing to properly account for or allocate funds.

*Id.* at 970 (quoting *Johnson*, 691 F.2d at 257). "[T]his Circuit has never countenanced 'innocent' or merely 'negligent' defalcation" as being sufficient to find a debt non-dischargeable under § 523(a)(4). *Id.* The *Patel* Court went on to find that the debtor recklessly misallocated funds, citing his testimony that he paid his own expenses, including his wages, before paying the plaintiff; the debtor's "woefully inadequate" attempts at accounting; and the debtor's concession "that his business operations were sloppy at best . . . ." *Id.* at 971. Proving the elements of a case under the Act, alone, is not sufficient under *Bullock* to entitle a creditor to relief under Section 523(a)(4); rather, the requisite finding of the state of mind of "moral turpitude or intentional wrong" is required. *See Shears v. Vestal (In re Vestal)*, 521 B.R. 604, 610-12 (Bankr. W.D. Mich. 2014) (holding that the burden of proof shifts to the creditor challenging dischargeability to demonstrate that the debtor intentionally or recklessly acted when violating the Act.

## Analysis and Conclusion

Here, there are no genuine issues of fact as to the essential elements of this Section 523(a)(4) action. The facts of this case are not disputed by Defendant. While Defendant denies that summary judgment is appropriate, he offers nothing to contradict the facts as asserted by Plaintiff, which facts are supported by the exhibits attached to the instant Motion. The requisite fiduciary relationship exists because, under *Patel,* there is no dispute Livingston Ceiling was a "contractor" for purposes of the Act, and thus a fiduciary to its supplier, Plaintiff. And there is no dispute that Plaintiff supplied materials to Livingston Ceiling for the specific projects at issue.

7

The breach of fiduciary duty occurred when Livingston Ceiling failed to remit payment in full to Plaintiff, despite receiving payment for the projects at issue. Defendant asserted at oral argument that all funds received from these projects went to pay bills and not to him personally, but Defendant offered no evidence or exhibits to support his statements. Even if these assertions are true, such do not offer a defense to Defendant, who chose to not pay Plaintiff, especially as Defendant's statements only vaguely assert that he did not pay himself, which leaves open the possibility that he paid others not connected with these projects.

Accordingly, Defendant has not adequately accounted for the funds and this failure satisfies the intent element. The damages suffered by Plaintiff total the remaining amount of $14,516.52, plus treble damages, a time price differential service charge of 1.5% per month, plus reasonable attorney fees. Thus, the Court finds that Plaintiff, as the moving party, has met its burden of showing the absence of a genuine issue of material fact under Section 523(a)(4), and that Defendant has failed to meet his burden of showing the existence of a genuine issue of material fact.

Plaintiff's Motion for Summary Judgement is GRANTED because no fact issues exist as to whether Defendant's actions amounted to defalcation while acting in a fiduciary capacity, resulting in the damages to Plaintiff as just stated. Pursuant to Section 523(a)(4), this warrants a finding of nondischargeability. Because the Court is granting summary judgment to Plaintiff on other grounds, the Court need not rule on Plaintiff's Rule 16(f) argument for judgment in its favor due to Defendant's failure to appear for the mediation conference.

Counsel for the Plaintiff is directed to prepare an order consistent with this opinion and entry of order procedures of this Court.

**Not for Publication**

**Signed on January 16, 2020**



/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge